United States District Court
for the Southern District of Georgia
Brunswick Division

FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.

2007 JAN 26  P 5: 02

CLERK
SO. DIST. OF GA.

| | | |
|---|---|---|
| BENJAMIN T. CATHEY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| WILLIAM T. SWEENEY, as Administrator for the Board of Trustees of the PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, and the PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND, | : | |
| Defendants. | : | NO. CV205-202 |

## O R D E R

Plaintiff, Benjamin T. Cathey, filed this action against Defendants, William T. Sweeney, as Administrator of the Board of Trustees of the Plumbers and Pipefitters National Pension Fund, and the Plumbers and Pipefitters National Pension Fund, seeking review of his pension benefit calculation. By Order dated July 18, 2006, the Court remanded the case to the plan administrator to afford the Board of Trustees ("Trustees") an

AO 72A
(Rev. 8/82)

opportunity to address and resolve Plaintiff's new allegations of error. (Doc. No. 42.)

Presently before the Court is Defendants' renewed motion for summary judgment.[1] Because the Court finds that the Trustees' decision was proper, Defendants' motion will be **GRANTED**.

## BACKGROUND

The relevant facts are not in dispute. From 1957 to 2004, Cathey worked for various employers who contributed to the Plumbers and Pipefitters National Pension Fund (the "Fund") on his behalf, pursuant to a Collective Bargaining Agreement. Pension benefits from the Fund are determined under the Plumbers and Pipefitters National Pension Plan (the "Plan").

Article 4 of the Plan addresses pension eligibility and amounts. Section 4.20 provides,

> A participant shall be deemed to have separated from Covered Employment on the last day of work which is followed by five consecutive Calendar Years in which the employee fails to earn at least one-tenth (1/10th) of a year of future Service Credit. If a Participant returns to Covered Employment after five consecutive One-Year Breaks in Service, he may accrue additional benefits under the terms of the Plan then

---

[1] All previous motions were disposed of by the Court's July 18, 2006, Order. (See Doc. No. 42.)

in effect and the Contribution Rates at which he subsequently works. Such additional accrued benefits shall be added to his previously accrued benefits to determine his total accrued benefits.

(Plan, Doc. No. 26, Ex. A at pg. 60.)

Article 5 of the Plan addresses pension credits and years of vesting service. Section 5.06(a) provides,

> If a person has a Break in Service before he has attained Vested Status, it has the effect of cancelling his standing under this Plan; that is, his participation, his previously credited Years of Vesting Service, and his previous Pension Credits. However, a Break may be temporary, subject to repair by a sufficient amount of subsequent service. A longer break may be permanent.

(Plan, Doc. No. 26, Ex. A at pg. 64.)

Plan participants earn pension credits based on their hours of service in jobs that are covered by the Plan. Cathey earned 16.8 pension credits between 1957 and 1989 and 7.8 pension credits between 1997 and 2004. He earned no pension credits between 1990 and 1996 because he worked for a non-contributing employer during that period of time.

Pursuant to section 4.20 of the Plan, the Trustees construed Cathey's failure to earn any pension credits between 1990 and 1996 as a separation from covered employment. Thus, two different contribution rates were used to calculate his benefit amount. First, the Trustees determined that Cathey's

3

highest contribution rate between 1957 and 1989 was $0.55 per hour and applied this rate to the 16.8 pension credits Cathey earned during that period of time. Next, the Trustees determined that Cathey's highest contribution rate from 1997 until his retirement in 2004 was $1.60 per hour and applied this rate to the 7.8 pension credits Cathey earned during that period of time. These two amounts were then added together to determine Cathey's monthly pension amount.

The gravamen of Cathey's argument on appeal was that the Trustees erred in applying two different contribution rates. According to Cathey, he repaired his five consecutive one year breaks in service from 1990 to 1997 by returning to covered employment for the requisite period as provided in section 5.06 of the Plan.

The Trustees denied Cathey's appeal. In rendering their decision, the Trustees distinguished a "separation from covered employment" from a "break in service" and concluded that the repair provisions contained in section 5.06 of the Plan are inapplicable when, as here, the plan participant has attained vested status. The Trustees interpreted section 4.20 of the Plan to mean that the instant a participant satisfies the definition of separation of covered employment by failing to

AO 72A
(Rev. 8/82)

work the specified number of hours, service credits earned prior to separation simply accrue benefits based upon the contribution rate in effect at the time of separation, while service credits earned after separation accrue benefits based upon the contribution rate in effect upon retirement.

**DISCUSSION**

Congress created the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. "to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." Moorman v. UnumProvident Corp., 464 F.3d 1260, 1264-65 (11th Cir. 2006) (citations and quotations omitted). To this end, a court must follow a well defined series of steps in reviewing a denial of benefits decision in an ERISA case. Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1231-32 (11th Cir. 2006); Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1137 (11th Cir. 2004); HCA Health Servs. of Ga., Inc., v. Employers Health Ins. Co., 240 F.3d 982, 993-95 (11th Cir.), reh'g & reh'g en banc denied, 254 F.3d 77 (2001). "At each step, the court makes a determination that results in either the progression to the next step or the end of the

inquiry." Tippitt, 457 F.3d at 1232 (quoting HCA Health Servs. of Ga., Inc., 240 F.3d at 993).

ERISA does not expressly set forth the appropriate standard of review for actions challenging benefit eligibility determinations. Therefore, the first step requires the district court to determine which standard to apply when reviewing a plan administrator's decision to deny benefits. Hunt v. Hawthorne Assocs., Inc., 119 F.3d 888, 911 (11th Cir.), reh'g & reh'g en banc denied, 131 F.3d 157 (11th Cir. 1997), cert. denied, 523 U.S. 1120, 118 S.Ct. 1800, 140 L.Ed.2d 940 (1998). Generally, the standard of review for a denial of benefits under ERISA is de novo. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). However, when the plan gives the administrator discretionary authority to construe the terms of the plan, the standard of review is arbitrary and capricious.[2] HCA Health Servs. of Ga., Inc., 240 F.3d at 993.

Because the Fund at issue in the instant case expressly gives the Trustees "the exclusive right and discretionary

---

[2] A third standard of review, a heightened arbitrary and capricious review, is applied when the plan gives the administrator discretionary authority and a conflict of interest exists. Williams, 373 F.3d at 1137. There is no evidence in the record that such a conflict exists under the facts of the instant case.

AO 72A
(Rev. 8/82)

authority to construe the terms of the plan . . . including but not limited to determination of eligibility for benefits," the Court must apply the arbitrary and capricious standard. (See Plan § 9.03, Doc. 26, Ex. A at pg. 72.) Under this standard, an administrator's determination must be upheld if it has a reasonable factual basis, even if the record also contains contrary information. Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1280 (11th Cir. 2005) (citing Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989)).

The next step in reviewing the benefits decision of an ERISA plan administrator is determining whether the administrator's interpretation of the Plan was "wrong," or legally incorrect. See Tippitt, 457 F.3d at 1232 (citing HCA, 240 F.3d at 993); see also Lee v. Blue Cross/Blue Shield of Ala., 10 F.3d 1547, 1550 (11th Cir. 1994). If the administrator's interpretation was correct, then the inquiry ends. However, even if the administrator's interpretation was incorrect, the Court may still uphold it if the administrator's decision "was not tainted by self interest" — that is, was not arbitrary and capricious. See HCA Health Servs. of Ga., Inc., 240 F.3d at 993 (quoting Brown v. Blue Cross & Blue Shield, 898 F.2d 1556, 1566 (11th Cir. 1990)); Godfrey v. BellSouth

7

Telecomms., Inc., 89 F.3d 755, 757 (11th Cir. 1996). Thus, the Court must next decide whether the Trustees' correctly determined that a separation from covered employment under section 4.20 of the Plan could not be "repaired" pursuant to break in service repair provisions under section 5.06 of the Plan.

Defendants cite to the Sixth Circuit's unpublished decision in Lewis v. Plumbers and Pipefitters Nat'l Pension Fund, 91 F.3d 144 (Table) (6th Cir. 1996), to support their argument that a separation from covered employment under section 4.20 of the Plan cannot be "repaired." In Lewis, the participant challenged the trustees' interpretation of the terms of a pension plan identical to the one at issue in the instant case as not authorizing a waiver of the separation provisions contained in section 4.20 of the pension plan. The Sixth Circuit, in reversing the district court's ruling in the participant's favor, distinguished section 4.20 from section 5.06 and concluded that

> not only does § 4.20 define the meaning and effect of separation, but it also serves to set forth the contribution rate to apply when a participant incurs five consecutive one-year breaks in service. Interpreted in this light, whether plaintiff incurred a separation is unrelated to whether plaintiff incurred a break in service.

8

AO 72A
(Rev. 8/82)

Lewis, 91 F.3d 144, *3.

The Court finds the Sixth Circuit's reasoning in Lewis persuasive. Article 4 of the Plan addresses pension eligibility and the calculation of benefits. Pursuant to section 4.20, if a participant fails to work a specified number of hours over five consecutive years, he incurs a separation from covered employment. Service credits earned prior to the separation accrue benefits based upon the contribution rate in effect at the time of the separation. If the participant subsequently returns to work and again attains vested status, those service credits earned after the separation from covered employment accrue benefits based upon the contribution rate in effect at the time of the next separation or, in the instant case, Plaintiff's retirement. The purpose of this provision is to protect the Fund from individuals who leave the profession to work in a different field and subsequently return to the profession in order to get their prior benefit accruals updated without additional contributions being paid on their behalf. (See Admin. Decision, Doc. No. 48, Ex. 1 at pg 5-6.)

Article 5 of the Plan, in contrast, addresses the calculation of pension credits and years of vesting service, not the calculation of benefits. Pursuant to section 5.06(a),

AO 72A
(Rev. 8/82)

all prior years of service are cancelled for purposes of determining whether a participant has attained vested status when a participant incurs a break in service. Under section 5.06(b), however, a break in service can be repaired, enabling the participant to retain credit for the canceled years of service. This provision does not apply once a participant attains vested status. Thus, because Plaintiff in the instant case had attained vested status prior to his separation from covered employment, the repair provisions provided in § 5.06 are inapplicable. Accordingly, the Trustees' application of two different contribution rates pursuant to section 4.20 of the Plan was correct.

## CONCLUSION

The Court has read and considered the positions of all parties to this action. For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 45) is **GRANTED**. The Clerk is directed to enter an appropriate judgment.

**SO ORDERED** this 25 day of January, 2007.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)